IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JUNE 1997 SESSION

FILED

July 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9612-CR-00455 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. CHRIS CRAFT, JUDGE |
| DARRYL S. WILKS, | ) | |
| | ) | (Attempted Voluntary Manslaughter) |
| Appellant. | ) | |


FOR THE APPELLANT:

THOMAS E. HANSOM
659 Freeman
Memphis, TN 38122

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

JOHN W. PIEROTTI
District Attorney General

JAMES M. LAMMEY
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103


OPINION FILED: _____


AFFIRMED


JOE G. RILEY,
JUDGE

**OPINION**

The defendant, Darryl S. Wilks, was convicted by a Shelby County jury of attempted voluntary manslaughter. On appeal, he challenges the verdict as being contrary to the law and the evidence presented. He further contends that the trial court's curative instructions in response to a prosecution witness' statement were prejudicial. We find no error and affirm the judgment of the trial court.

**FACTS**

The state's proof at trial showed that on March 13, 1994, Prescilla Davis and her brother, Patrick Davis, were packing Ms. Davis' belongings at the home of the defendant. Ms. Davis had been living with the defendant for approximately five years and was moving out of the home. After they had finished packing, Ms. Davis and Mr. Davis left the defendant's house.

On their way home, Ms. Davis could not find her purse. She called the defendant to ask him to look for the purse. When he could not find it, she asked if they could come back to his house to look for it. After she unsuccessfully searched the house, she asked the defendant if he had seen the purse. The defendant denied having seen the purse and accused Ms. Davis of wearing another man's jacket. At this point, the defendant threatened Ms. Davis and Mr. Davis and told them to get out of his house.

As he and his sister were leaving, Mr. Davis noticed that the defendant had picked up a gun. Mr. Davis turned around to say something to the defendant, and the defendant hit him in the mouth. The defendant followed Ms. Davis outside and pointed the gun at her. Ms. Davis turned to run away, and the defendant shot her in the shoulder. Mr. Davis then tried to grab the defendant to prevent him from shooting his sister again, and the defendant shot him in both arms. At this time, Ms. Davis was lying on her back, and the defendant stood over her and shot her again in the chest. As Mr. Davis and Ms. Davis ran across the street to get away from the

2

defendant, Ms. Davis heard another shot.

The defendant testified on his own behalf. He stated that Ms. Davis and her brother returned to his house unexpectedly. Because he was a former undercover narcotics officer, he frequently answered the door carrying a firearm at his side when he was not expecting anyone. After Ms. Davis accused him of taking her purse, he asked both of them to leave. Mr. Davis and the defendant started fighting, and the gun fell down the defendant's pants. As the defendant was reaching for the weapon, Mr. Davis grabbed the gun. Mr. Davis and the defendant struggled, and the gun fired several times, hitting Mr. Davis and Ms. Davis. The defendant then went inside to call an ambulance.

The defendant was indicted on two (2) counts of attempted first degree murder. However, the jury found him guilty of the lesser included offense of attempted voluntary manslaughter of Ms. Davis. The jury found him not guilty of the attempted homicide of Mr. Davis.


## SUFFICIENCY OF THE EVIDENCE


Defendant argues that the guilty verdict was contrary to the law and the evidence presented. Specifically, he claims that the verdicts were inconsistent and represented a "compromise verdict." Therefore, he claims that no rational trier of fact could arrive at this verdict without a "total disregard for the law."

The defendant insists that the verdicts were inconsistent and represented a compromise by the jury. There is no requirement of consistency in a jury verdict. Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973); State v. Gennoe, 851 S.W.2d 833, 836 (Tenn. Crim. App. 1992); State v. Hicks, 835 S.W.2d 32, 36 (Tenn. Crim. App. 1992). An acquittal on one count of an indictment cannot be considered *res judicata* to another count even though both counts stem from the same criminal transaction. Wiggins, 498 S.W.2d at 94; Gennoe, 851 S.W.2d at 836; State v. Bloodsaw, 746 S.W.2d 722, 726 (Tenn. Crim. App. 1987). "This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are

3

satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." Wiggins, 498 S.W.2d at 94. Therefore, the only issue is whether the evidence is sufficient to sustain the verdict of guilt of attempted voluntary manslaughter of Ms. Davis.

This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). It is the appellate court's duty to affirm the conviction if the evidence was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

We need not speculate as to the jury's acquittal on the attempted murder of Mr. Davis while finding the defendant guilty of attempted voluntary manslaughter of Ms. Davis. However, we do find sufficient evidence in the record for a rational trier of fact to conclude that the defendant attempted to kill Ms. Davis while he was in a state of passion.[1] This issue is without merit.

### TRIAL COURT'S CAUTIONARY INSTRUCTIONS

In his final assignment of error, defendant alleges that the trial court improperly commented on the evidence when the court made cautionary remarks to the jury in response to a statement made by Ms. Davis. When asked by the prosecutor if she told the defendant where she would be living, Ms. Davis responded that she was "scared to tell him where [she] was going to be staying." After an objection by the defense, the trial court instructed the jury and Ms. Davis

---

[1] The jury might well have found adequate provocation due to the argument between Ms. Davis and the defendant.

4

as follows:

> THE COURT: Ladies and gentlemen, this witness said something about, I was afraid to tell him where I lived. And let me tell you that that has absolutely nothing to do with this case.
>
> And I will tell you now, ma'am, that if you mention anything about being afraid of him or this or that again, I can find you in contempt of court and send you to jail for 10 days.
>
> THE WITNESS: Yes, sir.
>
> THE COURT: You are not to mention anything about being afraid. You're not to try to do anything like that. We're interested in what happened on this date of March 13, 1994. We're not interested in anything that may happen in the future or in the past or what she thinks might happen or might not happen; it's just what happened.
>
> So I'm going to ask you to completely disregard any kind of thing in her mind about whether or not she wanted this man to tell her to live [sic] because that's not proof in this case. Can y'all do that? All right. Thank you.

Subsequently, the defendant made a motion for a mistrial as a result of these remarks. The trial court denied his motion.

The defendant claims that this instruction to the jury might have inadvertently emphasized Ms. Davis' testimony. He argues that when the trial court admonished the witness, this might have evoked sympathy in the minds of the jury for the victim, Ms. Davis.

Initially, we find nothing inappropriate about the trial court's comments to the jury and the witness. Secondly, there is no evidence in the record to support the allegation that these comments prejudiced the defendant in any way. The trial court asked that the jury disregard Ms. Davis' statement. The jury is presumed to have followed the trial court's curative instructions, absent evidence to the contrary. State v. Smith, 893 S.W.2d 908, 914 (Tenn. 1994); State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996); State v. Melvin, 913 S.W.2d 195, 201 (Tenn. Crim. App. 1995).

Furthermore, the trial court did not err in denying the defendant's motion for a mistrial. The decision to grant a mistrial lies within the discretion of the trial court and will not be disturbed on appeal unless the trial court abuses this discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). The trial court did not abuse

5

its discretion in denying the motion for a mistrial.  This issue has no merit.

## CONCLUSION

We conclude that the evidence presented is sufficient for a reasonable trier of fact to find the defendant guilty of attempted voluntary manslaughter. Additionally, the trial court's curative comments to the jury were not improper nor prejudicial.  Accordingly, the judgment of the trial court is affirmed.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**PAUL G. SUMMERS, JUDGE**

_____
**DAVID H. WELLES, JUDGE**