IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2013 Session

**STATE OF TENNESSEE v. STEVE DUCLAIR**

**Appeal from the Criminal Court for Sullivan County**
**No. S56036    R. Jerry Beck, Judge**

---

**No. E2012-02580-CCA-R3-CD - Filed April 23, 2014**

---

Appellant, Steve Duclair, was named in a presentment by the Sullivan County Grand Jury in September of 2008 for two counts of the sale of one-half a gram or more of cocaine within 1,000 feet of a school and two counts of the delivery of one-half a gram or more of cocaine within 1,000 feet of a school. The grand jury later named Appellant in a second presentment charging Appellant for one count of selling one-half gram or more of cocaine within 1,000 feet of a school and one count of delivering one-half gram or more of cocaine within 1,000 feet of a school. After a jury trial, Appellant was convicted of two counts of selling one-half gram or more of cocaine, two counts of delivering one-half gram or more of cocaine, one count of selling one-half gram or more of cocaine within 1,000 feet of a school, and one count of delivering one-half gram or more of cocaine within 1,000 feet of a school. The trial court merged the convictions for the sale of cocaine with the convictions for the delivery of cocaine. Appellant was sentenced to an effective sentence of fifteen years at 100 percent. After the denial of a motion for new trial, Appellant presents the following issues for our review on appeal: (1) whether the evidence was sufficient to support the convictions; (2) whether the trial court committed error while dismissing the alternate juror at the conclusion of the trial; (3) whether the trial court committed error by asking Appellant where he was from during voir dire; (4) whether the trial court properly instructed the jury; (5) whether Appellant's sentences constitute cruel and unusual punishment; (6) whether the assistant district attorney committed prosecutorial misconduct; and (7) whether the Drug-Free School Zone Act is unconstitutional. After a review of the record and the applicable authorities, we determine that the evidence was sufficient to support the convictions; the trial court properly instructed the jury; the trial court did not abuse its discretion in sentencing Appellant; the Drug-Free School Zone Act is not unconstitutional; the trial court did not violate Appellant's right from self-incrimination during voir dire; the trial court did not err in dismissing the alternate juror; and the prosecutor did not commit misconduct during closing argument. Consequently, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT. JR., and D. KELLY THOMAS, JR., JJ., joined.

Richard A. Spivey, Kingsport, Tennessee, for the appellant, Steve Duclair.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Barry Staubus, District Attorney General; and Joseph Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In early 2008, Lisa Thompson was contacted by local authorities about becoming a confidential informant. Ms. Thompson, at the time, was selling cocaine out of her home to support her own addiction to the drug. The home was located next door to Holston View Elementary School in Bristol, Tennessee.

Ms. Thompson agreed to plead guilty to selling cocaine and possession of drug paraphernalia in exchange for future cooperation as a confidential informant. As a result, she received a suspended sentence of three years, to be served on probation for six years. Ms. Thompson cooperated fully with authorities, providing assistance with over 100 cases for both the Sullivan County and Bristol vice squads. Among these transactions were three controlled purchases from Appellant.

On March 11, 2008, Ms. Thompson called Appellant two times, attempting to buy drugs. The calls were recorded. Appellant called her back and indicated that he would bring the drugs to her house. Ms. Thompson was supplied with $200 by the police. The transaction was videotaped. Appellant came to the house; Ms. Thompson gave him the $200 in exchange for cocaine weighing 1.3 grams.

On March 19, 2008, Ms. Thompson called Appellant trying to purchase cocaine. The police again provided her with $200. The transaction was videotaped. On this occasion, Detective Dennis Lee Ford, Jr. hid in Ms. Thompson's living room. Appellant again came to the residence and exchanged a package of cocaine with Ms. Thompson for the $200. The cocaine in this instance also weighed in at 1.3 grams.

At some point after the March 19 incident, Appellant called Ms. Thompson to notify her that he had a new telephone number. On August 15, 2008, Ms. Thompson made a phone call to Appellant. The call was recorded. Ms. Thompson told Appellant she was looking for a "bill," slang for $100 worth of cocaine. Ms. Thompson was wired with video equipment during this transaction. For some unexplained reason, the equipment failed. Appellant provided Ms. Thompson with .6 grams of cocaine on this occasion in exchange for the $100.

Ms. Thompson's home was located within 1,000 feet of Holston View Elementary School in Bristol, Tennessee.

As a result of these three transactions, Appellant was named in a presentment by the Sullivan County Grand Jury in September of 2008 for two counts of the sale of one-half a gram or more of cocaine within 1,000 feet of a school and two counts of the delivery of one-half a gram or more of cocaine within 1,000 feet of a school. A second presentment was issued charging Appellant for one count of selling one-half gram or more of cocaine within 1,000 feet of a school and one count of delivering one-half gram or more of cocaine within 1,000 feet of a school.

At trial, Appellant stipulated that the sale or delivery of cocaine occurred within 1,000 feet of Holston View Elementary School.

At the conclusion of the proof, the jury found Appellant guilty of two counts of selling .5 grams or more of cocaine, two counts of delivering .5 grams or more of cocaine, one count of selling .5 grams or more of cocaine within a school zone, and one count of delivering .5 grams or more of cocaine within a school zone. The trial court merged the counts for the sale of cocaine with the counts for delivery of cocaine, resulting in two convictions for selling .5 grams or more of cocaine, and one count of selling .5 grams or more of cocaine within a school zone. The trial court held a separate sentencing hearing at which Appellant was sentenced to eight years for each conviction for the sale of .5 grams or more of cocaine and fifteen years for the conviction for selling .5 grams or more of cocaine within a school zone. The sentences were ordered to be served concurrently, for a total effective sentence of fifteen years.

After the denial of a motion for new trial, Appellant perfected this appeal.

*Analysis*

*Sufficiency of the Evidence and Denial of Motion for Judgment of Acquittal*

*A. Sufficiency of the Evidence*

Appellant claims that the evidence at trial was insufficient to support the convictions. Specifically, he claims that the proof was "virtually identical" in that all three drug transactions took place at the home of Ms. Thompson, a location stipulated to be within 1,000 feet of a school. However, Appellant complains that the jury convicted him of the sale of cocaine within 1,000 feet of a school in only one count, an "irreconcilably inconsistent" verdict. In conjunction with his complaints about the sufficiency of the evidence and inconsistency of the verdict, Appellant also argues that the trial court improperly denied the motion for judgment of acquittal and improperly failed as thirteenth juror by upholding a verdict that was against the weight of the evidence. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether

the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). The Drug Free School Zone Act states that when an offense involving a controlled substance, in violation of Tennessee Code Annotated section 39-17-417,

> occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

Id. § 39-17-432. In order to sustain a conviction for this offense, the State was required to prove beyond a reasonable doubt that Appellant knowingly "possess[ed] [cocaine] with intent to manufacture, deliver or sell [cocaine]." T.C.A. § 39-17-417(a)(4) (2010). A violation of subsection (a) with respect to 0.5 grams or more of cocaine is a Class B felony. Id. § 39-17-417(c)(1). In addition, as described above, the Drug Free School Zone Act requires a violation to be punished one classification level higher. Id. § 39-17-432(b)(1) (2010). In other words, a defendant convicted of selling 0.5 grams or more of cocaine, ordinarily a Class B felony, would be punished for a Class A felony if the defendant sold the drug within 1,000 feet of a public or private elementary, middle, or high school. The Act does not create a separate criminal offense; "it merely imposes a harsher penalty for violations . . . occurring within a school zone." *State v. Smith*, 48 S.W.3d 159, 168 (Tenn. Crim. App. 2000).

Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the elements of the offense of selling more than .5 grams of cocaine on each of the occasions Appellant visited Ms. Thompson at her home. The transactions were recorded with audio, video, or both. Testing of the substances exchanged between Appellant and Ms. Thompson confirmed that, in each case, the substance sold by Appellant to Ms. Thompson was cocaine weighing more than .5 grams. In other words, the evidence was sufficient to support the convictions for selling more than .5 grams of cocaine.

Moreover, the evidence was sufficient to support the finding by the jury that the offense on August 15, 2008, occurred within 1,000 feet of a school. Appellant does not contest that he sold the cocaine; he merely argues that the jury's finding of the school zone enhancement for the August crime was inconsistent with the other verdicts such that the evidence should be rendered insufficient to support the convictions. Appellant cites *State v. Elkins*, 102 S.W.3d 578 (Tenn. 2003), to support his argument.

In *Elkins*, the supreme court cautioned that a "jury's verdict will not be overturned unless there are inaccuracies or inconsistencies that 'are so improbable or unsatisfactory as to create a reasonable doubt of [a defendant's] guilt." *Id.* at 582-83 (quoting *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim App. 1999)). In *Elkins*, the court pointed to inconsistencies in evidence, not inconsistencies in verdict as Appellant claims herein. At Appellant's trial, the parties stipulated that all three transactions occurred within 1,000 feet of an elementary school. Thus, the evidence was sufficient to support this conviction.

Additionally, we determine that the verdicts are not inconsistent, as argued by Appellant. The law in this state is that "consistency between verdicts on separate counts of an indictment is not necessary." *Wiggins v. State*, 498 S.W.2d 92, 93 (Tenn. 1973). This court has stated that "[i]nconsistent verdicts are permitted as long as there is sufficient evidence to permit a rational fact finder to find a defendant's guilt beyond a reasonable doubt on the charges on which the defendant was convicted." *State v. Tony Scott Walker*, No. 02C01-9704-CC-00147, 1997 WL 746433, at *3 (Tenn. Crim. App., at Jackson, Dec. 3, 1997), *perm. app. denied* (Tenn. Sept. 21, 1998). Thus, this Court's only inquiry when presented with inconsistent verdicts is the sufficiency of the evidence of the conviction offenses. *Id.* at *5; *see Wiggins*, 498 S.W.2d at 93. In *State v. Shelly Minor*, W2010-01677-CCA-R3-CD, 2012 WL 3055776, at *14 (Tenn. Crim. App., at Jackson, July 26, 2012), *perm. app. denied* (Tenn. Jan. 22, 2013), this Court affirmed a defendant's convictions for second degree murder and leaving the scene of an accident involving injury or death as a lesser included offense of leaving the scene of an accident resulting in death. On appeal, the defendant claimed that the verdicts were inconsistent, arguing that "the jury 'flatly rejected this notion that [the defendant] knew or reasonably should have known that [the victim's] death resulted from the accident.'" 2012 WL 3055776, at *14. We rejected that argument, reasoning that each count of an indictment is regarded as a separate offense. *Id.* With regard to seemingly inconsistent verdicts, we stated:

> Moreover, "[c]ourts have always resisted inquiring into a jury's thought processes." *United States v. Powell*, 469 U.S. 57, 67, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). This resistance is perhaps best illustrated in the cases, like the one herein, involving a defendant's challenge to the consistency of a jury's verdicts in a multi-count indictment. After *Wiggins*, this Court has consistently declined to disturb one conviction on the basis that the jury's acquittal on another offense is inconsistent, even when the elements and evidence of the two offenses intertwine or are the same. *See State v. Derek T. Payne*, No. W2001-00532-CCA-R3-CD, 2002 WL 31624813 (Tenn. Crim. App., Jackson, Nov. 20, 2002) (upholding conviction of second degree murder

-6-

as a lesser included offense of felony murder even when convicted of underlying felony).

The same reasoning applies herein. While Appellant's separate convictions for selling cocaine within a school zone and selling cocaine are seemingly inconsistent where the transactions occurred at the same location, the fact remains that the underlying evidence supported the finding that Appellant sold cocaine weighing more than .5 grams to a confidential informant on three separate instances. All of these transactions occurred within 1,000 feet of a school. Any further examination as to how the jury reached a conclusion that one of the offenses warranted the school zone enhancement and the other two did not would lead to improper speculation by this Court of the jury's reasoning.[1]  Moreover, Appellant does not explain how the failure of the jury to find the school zone enhancement in two of the counts renders the evidence insufficient to support the remaining convictions for the sale of cocaine. As stated previously, the sale of a controlled substance within a school zone is not an element of a criminal offense, it is a determination that leads to the imposition of a harsher penalty. Appellant is not entitled to relief on this issue.

### B.  Motion for Judgment of Acquittal/Thirteenth Juror

Within his argument of the sufficiency of the evidence, Appellant also includes a statement that the trial court improperly denied a motion for judgment of acquittal and failed to properly act as thirteenth juror.

A motion for judgment of acquittal raises a question of law for the trial court's determination. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. *State v. Blanton*, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996). Appellate courts are ill-suited to assess whether the verdict is supported by the weight and credibility of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). Thus, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993).

Accordingly, the standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the

---

[1]Interestingly, we note that during deliberation the jury inquired about the minimum sentence for a Class A felony and whether Appellant was given the opportunity, like Ms. Thompson, to work as a confidential informant in exchange for a lesser sentence. The trial court informed the jury that he was unable to answer the questions. While this Court is not permitted to speculate on the jury's intent, it appears that the jury's verdict somehow reflects that the jury took the above into consideration when determining the crimes with which Appellant would be convicted.

sufficiency of the evidence after a conviction. *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). We have already determined that the evidence was sufficient to support the convictions. Therefore, the trial court did not err in denying a motion for judgment of acquittal.

As to the argument that the trial court failed in its role as thirteenth juror, we note that Rule 33(d) of the Tennessee Rules of Criminal Procedure provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(d). "This portion of the Rule is the modern equivalent to the 'thirteenth juror rule,' whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996) (footnote omitted). The Tennessee Supreme Court has held "that Rule 33[(d)] imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case." *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). Moreover, the "approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to the imposition of a valid judgment." *Id.* However, "Rule 33(f) does not require the trial judge to make an explicit statement on the record." *Id.* "Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." *Id.*

At the conclusion of the trial, the trial court noted its "mandatory duty" to serve as thirteenth juror and adopted the verdict of the jury. Further, at the hearing on Appellant's motion for new trial, the trial court stated that the evidence supported the verdict and overruled Appellant's motion. In addition, we too have concluded that the evidence supports the jury's verdict. Therefore, we find that the trial judge exercised its role as the thirteenth juror and approved the jury's verdict that Appellant was guilty of two counts of the sale of .5 grams or more of cocaine and one count of the sale of .5 grams or more of cocaine in a school zone. Appellant is not entitled to relief on this issue.

*Jury Discrimination*

Appellant next argues that the trial court improperly excused the only African American juror from the jury panel at the close of proof. Specifically, Appellant complains that fourteen jurors heard the case and one juror was excused prior to deliberation on the basis of a potential conflict with her vacation. The trial court then decided to reduce the number of jurors to twelve by utilizing a "blind draw" in which juror slips were shuffled, laid face down, and one was removed. Appellant complains that Juror John Garland was removed and that the trial court's actions amounted to a systematic exclusion of African

Americans from the jury. The trial court insists that Appellant waived the issue for failure to object to the trial court's procedure.

We agree. Typically, a defendant's failure to make a contemporaneous objection during trial constitutes a waiver of an issue. Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a) (stating that "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn. 1989). Additionally, Appellant does not argue that the actions of the trial court amounted to plain error.

Because Appellant did not object to the process by which the trial court dismissed the alternate juror, if this Court is to review Appellant's claims of jury discrimination, we must do so through the process of "plain error" review embodied in Rule 36(b) of the Tennessee Rules of Appellate Procedure, which provides, "When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."[2]

In exercising our discretion as to whether plain error review under Rule 36(b) of the Tennessee Rules of Appellate Procedure is appropriate, the Tennessee Supreme Court has directed that we examine five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). All five (5) factors must be present for plain error review. *Smith*, 24 S.W.3d at 283.

It is the accused's burden to persuade an appellate court that the trial court committed plain error. *See United States v. Olano*, 507 U.S. 725, 734 (1993) . Further, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283.

---

[2]This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless, the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well. This language was formerly contained in Rule 52(b) of the Tennessee Rules of Criminal Procedure.

We conclude that Appellant cannot meet the five factors necessitating plain error review. Specifically, Appellant has not shown that a clear and equivocal rule of law has been breached. This issue is without merit.

## Questioning Appellant During Voir Dire

Appellant argues on appeal that the trial court improperly asked Appellant a question during voir dire about where he resided. Appellant insists that this was a constitutional error that infringed on Appellant's right against self-incrimination. The State notes that Appellant failed to object to the question at trial and has failed to establish that plain error exists on appeal.

At the beginning of jury selection, the trial court asked counsel for Appellant, "And where is [Appellant] from [counsel]? What's his . . . ." Before the trial court could continue, counsel stated, "New York, Your Honor." The trial court repeated, "New York," before continuing to address the jury as follows: "My first question would be: Does anybody know [Appellant]? Is anyone related by blood or marriage to [him]?" The record contains no affirmative responses from the jury pool. The trial court then asked prospective jurors if anyone knew or was related to counsel for Appellant.

With regard to Appellant's objection to the question asked during jury selection, we conclude that Appellant has waived these issues by his failure to raise contemporaneous objections at trial. Tenn. R. App. P. 36(a). Appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); *see State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (holding that waiver applies when the defendant fails to make a contemporaneous objection).

Despite the absence of an objection at trial, this Court can review an issue for plain error on appeal, as stated above. In order to establish plain error, however, all five factors must be present. *Smith*, S.W.3d at 282-83. In the case herein, Appellant has failed to demonstrate that the trial court breached a clear and unequivocal rule of law. Ordinarily, it would be inappropriate for the trial court to ask questions of a defendant during voir dire. However, in the case herein, the record demonstrates that the trial court asked counsel a question about where Appellant was from in order to assist in determining whether any of the jury pool might know Appellant. Further, Appellant has failed to show that he waived an objection for tactical reasons. This issue is without merit.

Jury Instructions

Next, Appellant complains that the trial court improperly instructed the jury with regard to several issues. First, Appellant contends the trial court erred by refusing to instruct the jury that Ms. Thompson's "involvement in drug transactions was motivated by her addiction in order to clarify that her criminal conduct was not excused by her addiction as compared to [Appellant] who was said not to have been addicted to cocaine." Next, Appellant insists that the trial court should have given an accomplice instruction because Ms. Thompson was an accomplice to the criminal conduct. Lastly, Appellant requested a special instruction with regard to the Drug Free School Zone Act to reflect that Appellant did not know that the sale was occurring within a school zone and there were no children present at the time of the transactions. The State insists that the trial court properly instructed the jury.

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998). Because resolution of issues regarding just instructions are mixed questions of law and fact, the standard of review is de novo, with no presumption of correctness. *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

With regard to the jury instructions herein, Appellant requested that the trial court charge the jury with an instruction about Ms. Thompson's addiction and the fact that it did not excuse her criminal conduct. The trial court refused to give the instruction. On appeal, Appellant fails to cite to any authority which would have required the trial court to give such an instruction. In fact, the instruction would have probably been improper as the jury's task was to determine the guilt or innocence of Appellant, not Ms. Thompson.

Likewise, we determine that the trial court properly refused an accomplice instruction based on the behavior of Ms. Thompson. This Court has held that informants working under the direction of and for the police are not accomplices during the time that they are acting with the police to ensure "the conviction and punishment of [their] confederates." *See*

*Halquist v. State*, 489 S.W.2d 88, 94 (Tenn. Crim. App. 1972), *overruled on other ground by State v. Jones*, 598 S.W.2d 209 (Tenn. 1980). The evidence at trial clearly established that Ms. Thompson was a confidential informant cooperating with the police in order to set up transactions involving the sale of cocaine. The trial court properly refused to give an accomplice instruction.

Finally, Appellant argues that the trial court erred in instructing the jury with regard to the Drug Free School Zone Act. The instruction given to the jury by the trial court is as follows:

> The purpose of the drug free school zone act is to provide students in the State of Tennessee an environment in which they can learn without the distractions and dangers that are incident to illegal drug activity. As a result, it is not a defense that: no children were present; that school was not in session; that the drug transaction occurred in a private home. The drug free school act is in effect twenty four (24) hours a day, sever (7) days a week. The drug free school zone act prohibits the illegal sale or delivery of drugs within 1,000 feet of a property that comprises a public or private elementary, middle[,] or secondary school.

At trial, Appellant objected to the instruction. Counsel for Appellant stated "my objection is not that that's not the law . . . . [It] is that the law -it's - it's sufficiently covered in the instruction itself, and it draws undue attention to the Drug Free School Zone Act." On appeal, Appellant argues that the trial court improperly charged the jury with matters of fact. It is well-settled that a defendant cannot assert different ground for an objection on appeal. *See State v. Brock*, 678 S.W.2d 486 (Tenn. Crim. App. 1984). Regardless, the instruction given by the trial court properly summarizes the Act. This issue is without merit.

*Sentencing*

Appellant argues on appeal that his sentence constitutes cruel and inhuman punishment because it is disproportionate to the crime when considered with the sentence imposed on Ms. Thompson. The State submits that the sentence is appropriate.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then

determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

In the case herein, Appellant's complaint is that the sentence he received is disproportionate. He does not argue that the sentence is outside the appropriate range or that the trial court in some way deviated from the sentencing guidelines. In order to determine, in a non-capital case, if a sentence is disproportionate and therefore in violation of the Eighth Amendments guarantee from cruel and unusual punishment, the Tennessee Supreme Court has adopted the following analysis:

> [T]he sentence is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends - the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

*State v. Harris*, 844 S.W.2d 601, 602 (Tenn. 1992). A successful challenge to a sentence utilizing a proportionality argument is "rare." *Id.* at 602. In fact, this Court has analyzed the proportionality and consitutionality of sentences imposed for the sale of drugs both in and outside a school zone. The court determined in each occasion that the sentences did not yield the inference of gross disproportionality. *Smith*, 48 S.W.3d at 170; *State v. Jenkins*, 15 S.W.3d 914, 919-20 (Tenn. Crim. App. 1999). Appellant's sentence herein at fifteen years for the sale of more than .5 grams of cocaine within 1,000 feet of a school does not meet the threshold inference of gross disproportionality. Further, Appellant has cited to one other

sentence, Ms. Thompson's sentence, in order to prove his point. Ms. Thompson pled guilty to two counts of the Class C felony offense of selling less than .5 grams of cocaine in return for a suspended sentence and six years of probation. Ms. Thompson was not convicted of the same crime as Appellant. Thus, it would be inappropriate and illogical to compare their sentences with regard to proportionality. Moreover, Appellant's sentence of fifteen years is well within the range for a Range I, standard offender convicted of the Class A felony of selling more than .5 grams of cocaine within 1,000 feet of a school under Tennessee Code Annotated section 39-17-417 and 39-17-432. For Class A felonies, the sentence range is fifteen to twenty-five years. T.C.A. § 40-35-112(a). This issue is without merit.

*Prosecutorial Misconduct*

Appellant complains on appeal that the trial court failed to sustain objections on at least five occasions during trial when counsel for the State commented on Appellant's decision not to testify. Appellant also argues that the State committed prosecutorial misconduct by claiming in closing argument that Appellant dictated the location of the drug transactions, among other things. The State argues that Appellant has waived any issue with regard to Appellant's decision not to testify for failing to support it with specific citations to the record and argument in accordance with Tennessee Rule of Appellate Procedure 27(a)(7)(A) and Tennessee Court of Criminal Appeals Rule 10(b). The State submits that Appellant waived any argument with respect to the State's closing argument on the basis that Appellant failed to provide relevant legal authority in his brief.

With regard to prosecutorial misconduct, Appellant states that there were "five occasions during the course of the trial" that the State argued that Appellant "should have responded and/or testified." To support his argument, Appellant cites generally to five pages of transcript. He fails to specify or explain what statements he alleges were a comment on his decision to remain silent. In fact, two of the pages cited by Appellant do not contain any argument to the jury. Instead, they contain discussion between counsel and the trial court about statements made by counsel for the State during closing argument. We will address the two specific instances we were able to identify from Appellant's argument below along with our discussion of statements made by counsel for the State during closing argument that Appellant finds objectionable.

In general, the scope of closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). However, argument must be temperate, "predicated on evidence introduced during the trial," and relevant to the issues being tried. *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994). Thus, the State must not engage in argument designed to inflame the jurors and should

restrict its comments to matters properly in evidence at trial. *State v. Hall*, 976 S.W.2d 121, 158 (Tenn. 1998).

When a reviewing court finds improper argument, *State v. Philpott*, 882 S.W.2d 394 (Tenn. Crim. App. 1994), sets out five factors to determine whether a prosecutor's improper conduct could have affected the verdict to the "prejudice of the defendant." *Id.* at 408. The factors are: (1) the conduct complained of in light of the facts and circumstances of the case; (2) the curative measures undertaken; (3) the intent of the prosecutor in making the improper remarks; (4) the cumulative effect of the improper conduct and any other errors in the record; and, (5) the relative strength or weakness of the case. *Id.* (citing *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); *see also State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

In *State v. Goltz*, 111 S.W.3d 1 (Tenn. Crim. App. 2003), this Court set out the following five recognized areas of prosecutorial misconduct related to argument of counsel:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7-106(c)(4).

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *See Cauthern*, 967 S.W.2d at 737; *State v. Stephenson*, 878 S.W.2d 530, 541 (Tenn. 1994).

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *See Cauthern*, 967 S.W.2d at 737; *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

111 S.W.3d at 6.

The first objection to the prosecutor's argument came in response to the following argument from counsel for the State: "Very simple case. The State's evidence clearly shows his guilt. But there were two issues that the defense brought up during this case. Number one: These police officers and Lisa Thompson lured him in, brought him into the school . . . ." Counsel for Appellant objected on the basis that he did not want the State "commenting" on what he "tried or didn't try to do" claiming that was an issue for the jury to decide. His objection was not based at all on any interpretation of the argument for the State as an improper comment on the decision of Appellant not to testify. An appellant cannot change grounds for an objection between the trial court and the appellate court. *State v. Dooley*, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000) (citing *State v. Brewer*, 932 S.W.2d 1, 9 (Tenn. Crim. App. 1996). Moreover, it is not clear how this statement by counsel for the State could be interpreted to amount to a comment on Appellant's decision not to testify. Counsel for the State did not commit prosecutorial misconduct. This issue is without merit.

Appellant's next objection was to the following statement:

> The evidence is not clear with no contradictions, they always left it up to him to decide where he was going to sell and deliver his cocaine. And as you heard from these detectives and from Ms. Thompson, they did deals at her home; they did deals in other locations in Bristol; they did . . . .

In Appellant's brief, he argues that this argument by the State is opposite to what the redacted portions of the telephone calls between Ms. Thompson and Appellant contained. The tapes were redacted prior to trial with no argument from Appellant. The redacted portions of the tapes were not brought up at trial. Counsel for Appellant did not object to the redacted portions of the tape. Again, Appellant cannot object for one reason at trial and another reason on appeal. *Id.* Further, the statements by counsel for the State do not fall into one of the categories of prosecutorial misconduct as alleged by Appellant. This issue is without merit.

Appellant also complains about the following statement made by counsel for the State during closing argument:

> And defense counsel says of Detective Ginger Crowe, "Well, you know, when you put it all together it was only $500."

> You all remember how short those video tapes were? Audio tapes? Do you realize that how short those were, and you add whatever travel time and gas went into it, how much that is per hour? How much . . .

Counsel for Appellant objected without stating a reason. On appeal, he asserts that this statement in some way points to Appellant's decision not to testify. We fail to see the connection between the above-referenced statements and Appellant's failure to testify. This issue is without merit.

Appellant objected again after counsel for the State stated the following:

> And defense counsel said to Detective Ginger Crowe, "She was a big dealer; wasn't she?
>
> And Detective Crowe said, "No sir. She was a user. She was an addict that was selling small amounts to support her addiction." And guess what; when they search her home and she allows them to search her home, she says, "We found her crack pipe."
>
> She was right there in the throngs [sic] of her addiction. And yes, she sold twice to an informant that came to her home and purchased. And you know what; they gave her the opportunity that they told you they give in every case. You can give up your source.

Again, counsel for Appellant objected to the statement as improper argument. In fact, Appellant asked for a mistrial on the basis that the statement infringed on Appellant's right not to testify. The trial court overruled the objection and denied a mistrial on the basis that the statement was made about Ms. Thompson, not Appellant and the statement was an accurate recap of the testimony from the detective. We concur. Counsel for the State did not commit prosecutorial misconduct by making this statement.

Later, Appellant objected to another statement made by counsel for the State during closing argument. Counsel stated:

> And Mr. Spivey says to you, "She was a major drug dealer. We used a major drug dealer."
>
> This lady works for the last six years, on a daily basis, in the Vice Unit in Bristol, Tennessee, investigating these types of cases. And she told you Lisa Thompson was an addict buying cocaine.
>
> What you base this case upon comes from there and not here. There is no testimony that comes from here. There's no evidence that comes from here. It comes from over there.

And you heard the lady that works in it daily. And he says to you, "Well, you know what . . . ."

Appellant objected, and the trial court overruled the objection. It is unclear from the transcript what was the basis for the objection. Appellant's brief does not specify argument with respect to this section other than to insist that these statements somehow reflect on Appellant's decision not to testify. We are unable to identify an instance of prosecutorial misconduct. This issue is without merit.

The final objection made by Appellant during closing argument was to the following statement:

He says to you, "You know, Lisa Thompson, by her own admission, says she sold as many as ten or 17 times," whatever her testimony was.

Well, you know what, you don't always catch drug dealers when they're selling drugs. There are days they're selling drugs, you don't catch them.

They caught her twice selling drugs, and they gave her the opportunity to cooperate, and she agreed. And there was no testimony she knew any more people than he did; there was no testimony she could do any more people than he could. So I would remind you . . . .

On objection to this statement, counsel for Appellant informed the trial court that it was a "constitutional" objection. However, he did not specify the origin of the objection. Moreover, we fail to see any way that the prosecutor's statement could have been interpreted as a judgment on Appellant's failure to testify. Counsel for the State was arguing that the evidence at trial did not support Appellant's view of the facts. We decline to find prosecutorial misconduct. This issue is without merit.

*Constitutionality of the Drug Free School Act*

Appellant insists that the Drug Free School Zone Act is unconstitutionally vague and ambiguous. Specifically, he complains that the "reason for the enforcement of the statute . . . did not protect children from drug dealing and no children were endangered by [Appellant's] conduct" because the transactions at issue took place inside a residence where there were no children present. The State points out that Appellant failed to raise this issue at trial and fails to identify a specific constitutional violation that results from the application of the statute to his behavior.

-18-

Tennessee law is well-established that a party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal. *See* Tenn. R. App. P. 36(a). Moreover, if waived, this Court will not consider the issue on appeal unless it is clear from the record that plain error was committed. Further, this issue has been addressed by this Court, and the Drug Free School Zone Act was found to be neither overbroad nor vague in violation of the Fourteenth Amendment to the United States Constitution or Article I, section 8 of the Tennessee Constitution. *See Smith*, 48 S.W.3d at 169-70. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE